UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Jason J. Ellis,                                              Case No. 3:14-cv-02336

                    Plaintiff

        v.                                                   MEMORANDUM OPINION
                                                                  AND ORDER

Commissioner of Social Security,

                    Defendant


## I.    INTRODUCTION

        Plaintiff Jason J. Ellis objects to the Report and Recommendation of Magistrate Judge

Nancy Vecchiarelli, filed on August 19, 2015, which recommends I affirm the Commissioner of

Social Security's decision denying Ellis's application for Supplemental Security Income.  (Doc. No.

21).  Ellis contends Magistrate Judge Vecchiarelli erred in several ways in her review of the decision

of the Administrative Law Judge ("ALJ").  For the reasons stated below, Ellis's objections are

overruled and I adopt Magistrate Judge Vecchiarelli's Report and Recommendation as the Order of

the Court.

## II.    BACKGROUND

        Ellis alleges he became disabled on November 22, 2010, due to limitations from cardiac and

knee conditions, rheumatoid arthritis, and bipolar disorder.  His application was denied following a

hearing before the ALJ, and the Appeals Counsel of the Social Security Administration ("SSA")

declined to review the ALJ's decision.  Magistrate Judge Vecchiarelli recommends I affirm the ALJ's

decision.

        Ellis objects to Magistrate Judge Vecchiarelli's summary of the record evidence, asserting the

Magistrate Judge takes evidence out of context and distorts facts.  (*See, e.g.,* Doc. No. 22 at 2

("Plaintiff clarifies Magistrate[ Judge's] spin on [the] statement of facts.")).  Following my de novo review of the record, I conclude the Magistrate Judge's summary of the evidence does not affect the resolution of the substantive issues Ellis raises in his challenge to the ALJ's decision and overrule Ellis's objection.

### III.    STANDARD

An individual who applies for Social Security benefits may seek judicial review of a final decision of the Commissioner.  42 U.S.C. § 405(g).  A district court must affirm the Commissioner's decision unless the court concludes the Commissioner did not apply the correct legal standard or made findings of fact which are not supported by substantial evidence.  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).  Substantial evidence means "relevant evidence [which] a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec. of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  After a report and recommendation has been issued, the district court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

The SSA uses a five-step inquiry in determining whether a claimant is disabled.  At the first step, an ALJ must determine if the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines which, if any, of the claimant's impairments are severe.  § 404.1520(a)(4)(ii).  At step three, the ALJ considers whether any of the claimant's severe impairments meets or equals a listed impairment.  § 404.1520(a)(4)(iii).  At the fourth step, the ALJ must determine whether the claimant can perform any past relevant work.  § 404.1520(a)(4)(iv).  At the fifth step, the ALJ must determine whether the claimant can perform any other work.  § 404.1520(a)(4)(v).

### IV.    ANALYSIS

Ellis objects to the Magistrate Judge's Report and Recommendation regarding the

conclusions (1) Ellis has not proven his medical conditions meet one or more of the SSA's Listings and (2) the ALJ did not err in evaluating the opinion of Ellis's treating physician.  I conclude Ellis's objections are not well-founded and overrule them.

### A.  ELLIS'S CARDIOVASCULAR CONDITION

A Social Security plaintiff has the burden of proof through Step Four of the five-step inquiry.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  Ellis first contends he satisfies Listing 4.02, and that the ALJ's decision to the contrary at Step Three is not supported by substantial evidence.  (Doc. No. 22 at 6-8).  Listing 4.02 states as follows:

> Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A.   Medically documented presence of one of the following:
>
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 4.02.

The parties do not dispute that Ellis has presented medical evidence to satisfy Part A of Listing 4.02 – test results show systolic failure through an ejection fraction of 30 percent. (Doc. No. 21 at 15). Ellis contends he has satisfied Part B of the Listing because his treating cardiologist ordered Ellis to undergo a nuclear stress test rather than an exercise test, and that the ALJ and the Magistrate Judge erred in concluding to the contrary. (Doc. No. 22 at 8-9). Subsection 1 requires proof that a medical consultant has concluded an individual faces a significant risk from performing an exercise test. Ellis does not present evidence of such a conclusion; instead he argues the fact that Ellis was ordered to undergo a nuclear stress test rather than an exercise test alone is sufficient because "there is no reason to believe" the doctor would not have ordered the exercise test if Ellis could perform it. (Doc. No. 22 at 7). Ellis's inference, even if it is permissible evidence, is not mandated. The record evidence also shows Ellis has rheumatoid arthritis and a knee condition, and was told he should begin using a cane. (*See, e.g.,* Doc. No. 22 at 2-3, 9). Ellis does not identify any physician's conclusion that his heart condition restricted his ability to perform the exercise test and thus fails to carry his burden of proof. *Jones*, 336 F.3d at 474.

Ellis also argues Magistrate Judge Vecchiarelli "fails to appreciate that the listing is in the disjunctive format" and improperly required him to prove each subparagraph of Part B

4

of Listing 4.02.  (Doc. No. 22 at 6, 8).  Ellis's reading of Magistrate Judge Vecchiarelli's Report and Recommendation is erroneous.  The Magistrate Judge merely noted that Ellis did not present evidence concerning subsections 2 or 3 of Part B, but only as to subsection 1. (Doc. No. 21 at 15-16).  Magistrate Judge Vecchiarelli correctly quoted and applied the text of the regulation, and Ellis's objection is overruled.

### B.  RHEUMATOID ARTHRITIS

Ellis argues the ALJ and the Magistrate Judge erred in failing to conclude he satisfied the requirements of Listing 14.09, and that the ALJ failed to appropriately consider his rheumatoid arthritis.  (Doc. No. 22 at 8-9).  Listing 14.09 states the SSA may conclude that inflammatory arthritis, including rheumatoid arthritis, results in an "extreme" limitation, such as "persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in the inability to ambulate effectively . . . ."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 14.09.  The SSA regulations define the term "inability to ambulate effectively" as "an extreme limitation of the ability to walk," generally characterized "as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device[ or devices] that limits the functioning of both upper extremities."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00B2b(1).  Ellis fails to present evidence to show he meets this listing, because he fails to show he used or was instructed to use "a hand-held assistive device[] that limits the functioning of <u>both</u> upper extremities."  Id. (emphasis added).

Ellis also contends the ALJ did not adequately account for the limitations imposed by his rheumatoid arthritis and that the ALJ's general statement that the ALJ accommodated all of Ellis's restrictions does not indicate what the restrictions were or how the ALJ accommodated them. (Doc. No. 22 at 8-9).  The ALJ limited Ellis to less than the full range of light work after concluding Ellis's rheumatoid arthritis caused him "some functional limitations."  (Doc. No. 12 at 63-64).  Ellis

asserts the ALJ did not "account for limitations in movement, range of motion, joint pain, etc. along with swelling from RA," but does not identify any evidence which would require the ALJ to impose more restrictive limitations when determining Ellis's residual functional capacity.  I overrule Ellis's objection because there is substantial evidence to support the ALJ's decision.  *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (If the ALJ's decision is supported by substantial evidence, a court will affirm that decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion.") (citation omitted).

### C.  TREATING PHYSICIAN RULE

Finally, Ellis objects to Magistrate Judge Vecchiarelli's recommendation as to the ALJ's application of the treating physician rule.  Magistrate Judge Vecchiarelli concluded "the ALJ's opinion, taken as a whole, thoroughly evaluates the evidence and indicates the weight the ALJ gave it."  (Doc. No. 21 at 23).  I agree, and overrule Ellis's objection.

Ellis's treating psychiatrist stated Ellis has a number of marked limitations, including

> [Ellis's] ability to maintain attention and concentration for [an] extended period, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically base[d] symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.

(Doc. No. 12 at 65).  The ALJ gave little weight to this opinion, concluding the limitations "are inconsistent with the clinical findings, the [Global Assessment of Functioning] score of 55, the claimant's activities of daily living, and the medical record as a whole."  (Id.).

In considering an application for supplemental security income, the Social Security Administration ("SSA") must evaluate every medical opinion it receives.  20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).  The SSA places medical sources into three categories: (1) nonexamining sources; (2) nontreating, but examining, sources; and (3) treating sources.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  Treating sources are given the greatest amount of deference and generally are to be accorded controlling weight if they are "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in [the] case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  In deciding the amount of weight to give to a medical opinion, the SSA considers (1) the examining relationship; (2) the treatment relationship; (3) the supportability of the opinion in light of "all of the pertinent evidence"; (4) the consistency of the opinion with the record as a whole; (5) the medical source's specialization, if any; and (6) other factors the claimant or others bring to the SSA's attention which tend to support or contradict the source's opinion.  20 C.F.R. § 404.1527(c)(1)-(6); 20 C.F.R. § 416.927(c)(1)-(6).

The SSA "will always give good reasons" for the weight given to a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (The treating-source-opinion regulations "require only that the ALJ's decision include 'good reasons'" for the weight given to the treating source opinion, "not an exhaustive factor-by-factor analysis.") (quoting 20 C.F.R. § 404.1527(d)(2)[1]).  The treating-physician rule is designed to provide claimants with an understanding of the SSA's disposition of their applications and to permit "meaningful appellate review of the ALJ's application of the rule." *Rogers*, 486 F.3d at 242-43 (quoting *Wilson*, 378 F.3d at 544).  To provide good reasons for discounting a treating physician's opinion, the ALJ must identify the reasons for discounting the opinion and explain how those reasons affected the weight the ALJ assigned to the opinion.  *Rogers*, 486 F.3d at 243.

The ALJ summarized the medical evidence and concluded the marked limitations Ellis's treating psychiatrist identified were not consistent with the clinical findings or the medical record as a whole.  To be given controlling weight, treating source opinions must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Rogers*, 486 F.3d at 242.  There is no such evidence to support the marked limitations Ellis's treating psychiatrist identified.  Ellis fails to identify any evidence from his treating psychiatrist's records which would support the

---

[1]  In 2012, the formatting of the regulations was amended; this citation refers to what now is 20 C.F.R. § 414.1527(c)(2).

concentration, attendance, and pace related restrictions, and my review of the medical records reveals none.  The ALJ's opinion demonstrated consideration of the § 404.1527(c) factors and sufficiently identified reasons for the ALJ's rejection of the treating psychiatrist's opinion concerning marked limitations compared to the ALJ's adoption of the treating psychiatrist's mild and moderate limitations.  *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747-48 (6th Cir. 2007).

Moreover, the activities-of-daily-living evidence Ellis points to regarding his allegedly restricted level of functioning relates to his physical impairments, not his mental ones.  (Doc. No. 22 at 9-10).  Finally, the ALJ's reference to Ellis's GAF scores reflects evidence that is inconsistent with the alleged marked limitations, and is not used as conclusive proof Ellis is not disabled.  While the ALJ's opinion may not be a model of clarity, the SSA regulations dictate what the ALJ must do, not the format in which it must be done.  Ellis's objection is overruled.

## V.    CONCLUSION

For the reasons stated above, Ellis's objections are overruled, and I adopt Magistrate Judge Vecchiarelli's report and recommendation as the order of the court.  Ellis's complaint is dismissed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge